IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV 23-576 |
| ) | |
| WILLIAM MONFORD WOOD, ) | |
| ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**COMPLAINT FOR VIOLATION OF THE FALSE CLAIMS ACT,
FRAUD AND UNJUST ENRICHMENT**

Plaintiff, the United States of America, brings this civil action for treble damages and civil penalties under the False Claims Act, 31 U.S.C. 3729 *et seq*. ("FCA"), and under common law theories of fraud and unjust enrichment. In support of its claims, the United States alleges upon information and belief as follows:

## INTRODUCTION

1. This is a civil action for damages and penalties arising out of the false and/or fraudulent statements or claims Defendant submitted to Los Alamos National Security, LLC ("LANS"), a prime contractor of the United States Department of Energy that operated Los Alamos National Laboratory ("LANL"), in violation of the FCA, 31 U.S.C. §§ 3729-3733, as amended, and of the common law.

2. The United States Department of Energy's ("DOE") National Nuclear Security Administration and LANS were parties to Contract No. DE-AC52-06NA25396, a Cost-Reimbursement Management and Operating contract ("M&O Contract") where LANL was tasked to effectively, efficiently, and safely manage and operate LANL.

3. LANL is a DOE-owned facility in Los Alamos County, New Mexico. Under the cost-reimbursement M&O Contract, DOE reimbursed LANS for its costs incurred in the operation of LANL, including, but not limited to, travel and personnel-related costs such as hourly wages and benefits paid to LANS employees.

4. Defendant, an employee of LANS, submitted false claims for travel expenses and hours worked to LANS. LANS paid Defendant's claims for travel expenses and hours worked as set forth herein. The United States reimbursed LANS pursuant to the terms of the M&O Contract.

5. The FCA provides that any person who, with actual knowledge, or in reckless disregard or deliberate ignorance of the truth, causes to be submitted a false or fraudulent claim to the United States for payment or approval is liable for a civil penalty for each claim, plus three times the amount of damages sustained because of the false claim.

6. Defendant violated the FCA by knowingly making false statements or claims to LANS, a DOE contractor, thereby causing the United States Government to pay false claims for fictitious and/or inflated travel expenses and personnel costs associated with hours Defendant did not work.

7. The parties have entered into four tolling agreements. Most recently, Defendant agreed that the period of time between and including May 16, 2022, and July 10, 2023, will be excluded when determining whether any civil or administrative claims are time-barred by statute of limitations, laches, or any other time-related defenses.

**JURISDICTION AND VENUE**

8. This case arises under the FCA, as amended, 31 U.S.C. §§ 3729-3733, and applicable common law. This Court has subject matter jurisdiction over this action pursuant to 31 U.S.C. § 3732(a), and 28 U.S.C. § 1345.

9. Venue is proper under 28 U.S.C. § 1391(b), inasmuch as Defendant resides within the District of New Mexico, and the actions by which the claims arise occurred in the District of New Mexico.

## PARTIES

10. Plaintiff is the United States of America, acting on behalf of the United States Department of Energy, an agency of the United States.

11. Defendant is William Monford Wood, a resident of the State of New Mexico.

## LEGAL AND REGULATORY BACKGROUND

12. The FCA provides, in pertinent part, that any person who:

> **(A)** knowingly presents, or causes to be presented, a false claim for payment or approval; [or]
> **(B)** knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim, . . .
>
> * * *
>
> is liable to the United States for statutory damages and penalties.

31 U.S.C. § 3729(a)(1)(A)-(B).

13. Under the FCA, "knowing" and "knowingly" are defined as having "actual knowledge of the information;" acting "in deliberate ignorance of the truth or falsity of the information;" or acting "in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1).

14. "Knowing" and "knowingly" do not require proof of specific intent to defraud. *Id*.

15. The FCA provides that a person is liable to the United States for three times the damages which the Government sustains because of the act of that person, plus civil penalties. 31 U.S.C. § 3729(a)(1).

16. Currently, penalties under the FCA range from $13,508 to $27,018. *See* Civil Monetary Penalties Inflation Adjustments for 2023, 88 Fed. Reg. 5776-01, 2023 WL 1069618 (Jan. 30, 2023).

17. A person violating the FCA is also "liable to the United States Government for the costs of a civil action brought to recover any such penalty or damages." 31 U.S.C. § 3729(a)(3).

18. In New Mexico, fraudulent misrepresentation can be established by demonstrating a misrepresentation of fact; either knowledge of the falsity of the representation or recklessness on the part of the party making the misrepresentation; intent to deceive and to induce reliance on the misrepresentation; and detrimental reliance on the misrepresentation. *Applied Capital, Inc. v. Gibson*, 558 F. Supp. 2d 1189, 1200 (D.N.M. 2007). A Plaintiff alleging fraud may recover such damages as are the direct and natural consequences of the reliance on a fraudulent representation. *Id.*

19. In New Mexico, unjust enrichment can be established by demonstrating that another has knowingly benefitted at one's expense; in a manner such that allowance of the other to retain the benefit would be unjust. *Id.*

## FACTUAL BACKGROUND

20. Defendant worked at LANL from approximately 1993 to February 2019, when he entered into a separation agreement with LANS.

21. At all relevant times, Defendant was employed by LANS, a prime contractor of the United States Department of Energy's National Nuclear Security Administration that managed and operated LANL.

22. Defendant worked at the Los Alamos Neutron Science Center ("LANSCE"), LANS, LANL, and was required to swipe his LANL access badge to access his office.

23. Defendant's title was "Scientist III" and his responsibilities included performing and analyzing experiments.

24. Defendant's employment relationship with LANS was governed by the M&O Contract. The M&O Contract provided that DOE would reimburse LANS for travel expenses incurred by LANS employees. Only work-related travel was eligible for reimbursement under the M&O Contract, and reimbursement was not available for travel unrelated to employee job responsibilities. A condition for reimbursement under the M&O Contract enforced by Government officials was that travel be work related.

25. Defendant claimed that as part of his responsibilities, he would travel to Santa Barbara, California; Livermore, California; and a test site in Nevada, locations of DOE owned sites.

26. LANS employees were required to submit requests to LANS for permission to travel via Concur, an online travel system for corporate travel and expense services. Within 15 days of return from travel, LANS employees were required to submit requests to LANS for reimbursement for travel expenses via Concur.

27. Each LANS employee had their own login account for Concur.

28. Defendant would submit travel requests via Concur to his immediate supervisor for approval.

29. Defendant had the option of making reservations and travel arrangements through Concur, however, Defendant preferred to make his own travel arrangements directly with airlines, car rental agencies, and hotels.

30. Upon return from travel, Defendant would submit his travel vouchers into Concur for reimbursement from LANS, detailing actual expenses and uploading copies of original receipts; receipts were required for charges over $75.00.

31. Defendant, and all LANS employees, had to click an "Accept & Continue" button on a "Certification of Business Expenses" acknowledgment prior to submitting travel vouchers for reimbursement that read, in part, "I hereby certify that, except as otherwise noted, the information submitted in this expense report reflects only expenses incurred by me during official business of the Los Alamos National Laboratory on the dates shown. False claims and statements are illegal and may be punishable by fines and/or imprisonment."

32. Defendant claimed to use his personal credit card to pay for his work trips instead of the credit card provided by LANS.

33. Once the travel vouchers with associated receipts were submitted via Concur, a LANL "systems" person reviewed the voucher for approval.

34. Each time Defendant's travel voucher was approved, Defendant received payment by check. Defendant could have received payment directly into his bank account.

35. LANS paid Defendant's claims for travel expenses as set forth herein and the United States reimbursed LANS pursuant to the terms of the M&O Contract.

36. Defendant was required to input the time he worked on a weekly basis using the Oracle electronic time system. The following language was clearly visible at the top of the electronic timecard Defendant used to enter his hours worked, "Code of Conduct Tip: Report your time worked accurately and timely to the appropriate cost code." Defendant could click on either "Review before Save" or "Review before Submit" prior to submitting his timesheet via Oracle for payment by LANS.

37. The United States, under the M&O Contract, reimbursed LANS for Defendant's wages. Only hours actually worked were eligible for reimbursement. A condition for reimbursement under the M&O Contract enforced by Government officials was that wages were limited to hours actually worked.

38. Once an "approver" approved Defendant's timesheet, LANS paid Defendant by direct deposit into his Los Alamos National Bank account.

39. Defendant was paid on a bi-weekly basis. LANS paid Defendant's claims for hours worked as set forth herein and the United States reimbursed LANS pursuant to the terms of the M&O Contract.

40. Defendant submitted at least twenty-three (23) false claims for reimbursement from LANS, thereby causing LANS to submit false claims to the United States, as follows.

41. On July 12, 2016, Defendant submitted a claim, Concur Report 278732, for a purported trip to Oakland/Livermore, California, from Sunday, June 19 to Friday, June 24, 2016, and sought reimbursement for meals, airline tickets, baggage fees, a Hertz rental vehicle, mileage, and the Hampton Inn. In support of his claim, Defendant submitted fake receipts for lodging at the Hampton Inn, a Southwest Airlines flight, and a Hertz rental car. Records from Southwest Airlines, Hampton Inn, and Hertz show that Defendant did not take this trip. Defendant's claim for airfare was denied, however, he was paid the remaining fraudulent claim amount of $1,572.39.

42. On July 20, 2016, Defendant submitted a second claim, Concur Report 279502, for the airfare previously denied and was paid $731.98. In support of his claim, Defendant submitted the same fake Southwest Airlines receipt used in the previous claim.

43. Defendant falsely claimed via the Oracle system that he worked 9 hours a day every day from and including June 20 through June 23, 2016, for a total of 36 hours. This is the

same time he falsely claimed to be on a trip to Oakland/Livermore, California. LANL badge swipe data indicates that Defendant did not swipe in to any LANL badge access areas during this time. Defendant was neither on the trip he claimed to have taken, nor working at LANL facilities. Defendant was paid $4,182.12 for this claimed time, including salary and benefits.

44. On November 21, 2016, Defendant submitted a claim in the Concur travel system, Concur Report 295852, for a trip to Oakland/Livermore, California, from Tuesday, October 13 to Wednesday, October 14, 2016. Defendant submitted a claim for baggage fees but he did not pay the $20.00 claimed for baggage fees. Defendant also submitted a fake receipt from the Hampton Inn, Livermore, California for $153.70. Records from the Hampton Inn show that Defendant did not stay at the Hampton Inn on the date claimed.

45. On May 19, 2017, Defendant submitted a claim, Concur Report 317417, for reimbursement for a trip to Santa Barbara, California, from Sunday, April 23 to Wednesday, April 26, 2017, claiming $967.20 in airfare and $70 in baggage fees. Defendant's claim for airfare was originally denied by LANS because Defendant did not submit the required airfare receipts with this travel voucher. Defendant submitted a second claim on May 30, 2017, Concur Report 319382, for a single American Airlines ticket in the amount of $967.20. According to American Airlines, Defendant actually purchased two tickets, one for himself and one for his wife, each costing $483.60, and he did not pay baggage fees. Thus, Defendant falsely claimed that the American Airlines receipt reflected charges for his ticket only and that he incurred baggage fees while on this trip. LANS adjusted the amount claimed for airfare, and paid Defendant $951.90 and $70 in baggage fees.

46. Defendant claimed he went to Oakland/Livermore, California from Sunday, June 4 to Saturday, June 10, 2017. Defendant submitted a claim in the Concur travel system on June

23, 2017, Concur Report 322123, for meals, airline tickets, baggage fees, a Hertz rental car, rental car gas, mileage, parking and lodging at the Hampton Inn. Defendant claimed his flight left on June 4 and returned on June 9, however, he did not include a receipt. Southwest Airlines records indicate that Defendant flew roundtrip from Albuquerque to Oakland, leaving on June 6, 2017, and returning on June 7, 2017, and did not incur baggage fees. In support of his claim, Defendant submitted a fake receipt from the Hampton Inn, Livermore, California. Records from the Hampton Inn indicate that Defendant did not stay at the Hampton Inn on the dates claimed. Defendant also submitted a fake receipt for a Hertz rental car for the period of June 4 through June 9, 2017. Hertz records indicate that Defendant's rental period was from June 6 through June 7, 2017. No less than $1,456.02 of Defendant's claim for reimbursement through Concur for this trip was for expenses that he did not incur on work-related travel to Oakland/Livermore. These expenses were falsely claimed and not eligible for reimbursement under the M&O Contract.

47. Defendant falsely claimed through the Oracle system that he worked 9 hours a day every day from and including June 5 through June 8, 2017. As explained above, he was not on travel on June 5 or 8, 2017. LANL badge swipe data indicates that Defendant did not swipe in to any LANL badge access areas during this time period. Defendant was neither on the trip he claimed to have taken, nor working at LANL facilities on June 5 or 8, 2017. LANS paid Defendant $2,142.72, including salary and benefits, for claimed time that he was neither on travel nor at LANL.

48. Defendant submitted a fraudulent claim in the Concur travel system on August 22, 2017, Concur Report 329503, for a round-trip flight to Santa Barbara from Tuesday, June 27 to Saturday, July 1, 2017. In support of his claim, Defendant submitted a fake receipt for a $954.61 American Airlines ticket. American Airlines records indicate that Defendant paid $485.60 for his

ticket. Defendant also submitted a claim for baggage fees totaling $90.00, when American Airlines records indicate that he paid $60. The claim for airfare was originally denied by LANS because Defendant did not submit a "Fare quote, flight itinerary, and payment confirmation" as required.

49.     Defendant submitted a second claim for the airfare in the Concur travel system on September 6, 2017, Concur Report 331393. LANS paid Defendant for the entire airfare and baggage claimed.

50.     Defendant falsely claimed he went to Oakland/Livermore, California for work from Sunday, July 23 to Saturday, July 29, 2017. On August 22, 2017, Defendant fraudulently submitted claims in the Concur travel system, Concur Report 329522, for an airline ticket, meals, baggage fees, a Hertz rental car, rental car gas, mileage, parking and lodging at the Hampton Inn. Defendant purchased a ticket from Southwest Airlines for this time period however, Southwest Airlines records indicate that he cancelled the trip, was refunded the full amount of the ticket, and did not fly with Southwest during this time period. In support of his claim, Defendant submitted a fake receipt for a Hertz rental car. Hertz records indicate that Defendant did not rent a vehicle during this time period. Defendant also submitted a fake Hampton Inn receipt. Hampton Inn records indicate that he did not stay at the hotel during this time period. Defendant was not paid the total $847.96 claimed for his airfare. Instead, he was paid $352.37, for a total payment of $2,595.12 for fraudulent claims.

51.     Defendant then submitted a second false claim for the full airfare he claimed for his purported trip on July 23 through July 29, 2017, in the amount of $847.96 in the Concur travel system on September 6, 2017, Concur Report 331390. Defendant was paid the full amount claimed.

10

52. Defendant falsely claimed through the Oracle system that he worked 9 hours a day every day from and including July 24 through July 27, 2017, and 8 hours on July 28, 2017, for a total of 44 hours. This is the same time period he falsely claimed to be on a trip to Oakland, California. LANL badge swipe data indicates that Defendant did not swipe in to any LANL badge access areas during this time period. Defendant was neither on the trip he claimed to have taken nor working at LANL facilities. Defendant was paid $5,237.76 for his claimed time, including salary and benefits.

53. Defendant falsely claimed he went to Oakland/Livermore, California from Sunday, October 15 to Saturday, October 21, 2017. On October 25, 2017, Defendant fraudulently submitted a claim in the Concur travel system, Concur Report 340486, for an airline ticket, meals, baggage fees, a Hertz rental car, rental car gas, mileage, parking and the Hampton Inn. In support of his claim, Defendant submitted a fake receipt for a Southwest Airlines ticket. Southwest Airlines records indicate that Defendant did not fly with the airline during this time period. Defendant submitted a fake Hampton Inn receipt. Hampton Inn records indicate he did not stay at the hotel during this time period. Defendant submitted a fake receipt for a Hertz rental car. Hertz records indicate that Defendant did not rent a vehicle during this time period. Defendant was paid a total amount of $2,811.69.

54. On November 21, 2017, Defendant submitted a second false claim for airline tickets for the October 15 through October 21, 2017, trip in the Concur travel system, Concur Report 344127. In support of his claim, Defendant submitted a fake receipt for a Southwest Airlines ticket. Southwest Airlines records indicate that Defendant did not fly with the airline during this time period. Defendant was paid for his fraudulent claim in the amount of $1,711.92.

Case 1:23-cv-00576-KRS-JFR   Document 1   Filed 07/10/23   Page 12 of 17

55. On December 11, 2017, Defendant submitted a third false claim for airline tickets for the October 15 through October 21, 2017, trip in the Concur travel system, Concur Report 347154. In support of his claim, Defendant submitted a fake receipt for a Southwest Airlines ticket. Southwest Airlines records indicate that Defendant did not fly with the airline during this time period. Defendant was paid for his fraudulent claim in the amount of $539.50.

56. Defendant claimed through the Oracle system that he worked 9 hours a day every day from and including October 16 through October 19, 2017, and 8 hours on October 20, 2017, for a total of 44 hours. This is the same time period he falsely claimed to be on a trip to Oakland/Livermore, California. LANL badge swipe data indicates that Defendant did not swipe in to any LANL badge access areas during this time period. Defendant was neither on the trip he claimed to have taken nor working at LANL facilities. Defendant was paid $5,090.36 for the time he did not work, including salary and benefits.

57. Defendant claimed he traveled to Santa Barbara from Tuesday, November 28 to Sunday, December 2, 2017. Defendant did not take this trip and LANL badge swipe data indicates that Defendant's LANL access badge was used to access his LANL office on November 28, November 30, and December 1, 2017. On December 7, 2017, Defendant fraudulently submitted a claim in the Concur travel system, Concur Report 346812, for an airline ticket, meals, baggage fees, a Hertz rental car, rental car gas, mileage, parking and lodging at the Mason Beach Inn. In support of his claim, Defendant submitted a fake American Airlines receipt. American Airlines records indicate that Defendant did not fly with the airline during this time period. Defendant submitted a fake Mason Beach Inn receipt. Mason Beach Inn records indicate that the confirmation number on the fake receipt did not exist. Defendant submitted a fake receipt for a Hertz rental car. Hertz records indicate that Defendant did not rent a vehicle during this time

12

period. Defendant was not paid for his claimed airfare in the amount of $821.60 however, he was paid a total amount of $1,736.20.

58. On December 11, 2017, Defendant submitted a claim for the previously declined American Airlines ticket for travel from November 28 to December 2, 2017, in the Concur travel system, Concur Report 347153. American Airlines records indicate that Defendant did not fly with the airline during this time period. Defendant was paid $821.60.

59. Defendant claimed through the Oracle system that he worked 9 hours a day every day from and including November 28 through November 30, 2017, and 8 hours on December 1, 2017. This is the same time period he falsely claimed to be on a trip to Oakland, California. LANL badge swipe data indicates that Defendant did not swipe in to any LANL badge access areas on November 29, 2017. Defendant was neither on the trip he claimed to have taken, nor working at LANL facilities. Defendant was paid $1,041.21 for the time he did not work on November 29, including salary and benefits.

60. On December 20, 2017, Defendant submitted a fraudulent claim in the Concur travel system, Concur Report 348520, for an airline ticket, meals, baggage fees, a Hertz rental car, rental car gas, mileage, parking and lodging at the Mason Beach Inn. Defendant claimed to have taken a trip to Santa Barbara from December 4 to December 9, 2017. He did not take this trip. In fact, LANL badge swipe data indicates that he was at LANL facilities the mornings of December 4 and 5, 2017. In support of his claim, Defendant submitted a fake receipt for an American Airlines ticket. According to the airline, the ticket number was issued to another individual and not Defendant. Defendant submitted a fake Mason Beach Inn receipt. Mason Beach Inn records indicate that the confirmation number on the fake receipt did not exist. Defendant submitted a fake receipt for a Hertz rental car. Hertz records indicate that Defendant

did not rent a vehicle during this time period. Defendant was paid a total amount of $1,916.25. Defendant was not paid for his claimed airfare in the amount of $821.60.

61. On December 20, 2017, Defendant submitted another claim for the airline ticket previously declined in the Concur travel system, Concur Report 348527, and was paid the full amount of $821.60.

62. Defendant claimed through the Oracle system that he worked 9-hour days December 4 through December 7, 2017. This is the same time he falsely claimed to be on a trip to Santa Barbara, California. LANL badge swipe data indicates that Defendant did not swipe in to any LANL badge access areas on December 6 or 7, 2017. Defendant was neither on the trip he claimed to have taken, nor working at LANL facilities. Defendant was paid $2,082.42 for the time he did not work on December 6 and 7, including salary and benefits.

63. All of the Defendant's claims for reimbursement for travel costs and related payments for salary and benefits alleged above were false.

64. The United States would not have reimbursed LANS for Defendant's false claims had the Government been aware that Defendant did not actually travel for work when he claimed to do so, or that he did not incur the expenses he claimed. Nor would the United States have reimbursed LANS for hours Defendant was not working.

65. The purpose of the M&O Contract with LANS is, among other things, to provide personnel, equipment, materials, supplies, and services to manage and operate LANL. The United States expects to receive the goods and labor for which it pays. Otherwise, a base purpose of the M&O Contract is undermined, and the United States is denied a core benefit of the contract.

66. The same considerations apply to reimbursement for employee travel. The Government funds employee travel under the M&O Contract solely as a means to execute the purposes of the contract.

67. Defendant's fraudulent travel expenses and time billed when not working were not reimbursable under the M&O Contract.

68. In total, Defendant caused the submission of at least twenty-three (23) false claims, as described above. The United States suffered damages in the amount of $38,549.83.

## CLAIMS FOR RELIEF

### COUNT I - VIOLATION OF THE FALSE CLAIMS ACT

69. The United States re-alleges and incorporates by reference the foregoing allegations.

70. Beginning no later than July 12, 2016, Defendant knowingly submitted false and fraudulent claims to LANS for reimbursement for travel expenses that he did not incur, or did not incur within the scope of his employment, as described above.

71. By submitting false and fraudulent claims to LANS, Defendant caused LANS to submit false and fraudulent claims to the United States Government for payment, which were paid by the United States.

72. Beginning no later than July 12, 2016, Defendant knowingly submitted false and fraudulent claims to LANS for payment for hours that he did not work, as described above.

73. By submitting false and fraudulent claims to LANS for payment, Defendant caused LANS to submit false and fraudulent claims to the United States Government for payment, which the United States paid.

74. Defendant knowingly made, used, and caused to be made and used, false records and statements material to his false and fraudulent claims for reimbursement for travel expenses that he did not incur.

75. Defendant knowingly made, used, and caused to be made and used, false records and statements material to his false and fraudulent claims for payment for hours that he did not work.

76. By virtue of the acts described above, Defendant violated the False Claims Act.

COUNT II – FRAUDULENT MISREPRESENTATION

77. The United States re-alleges and incorporates by reference the foregoing allegations.

78. Defendant made misrepresentations of facts to LANS; with knowledge of the falsity of the representations; with intent to deceive and to induce reliance on the misrepresentations; and LANS relied to its detriment on the misrepresentations.

79. As a result of Defendant's fraudulent misrepresentations, the United States has been damaged and is entitled to recover those damages from Defendant in an amount to be determined at trial.

COUNT III – UNJUST ENRICHMENT

80. The United States re-alleges and incorporates by reference the foregoing allegations.

81. Defendant has been unjustly enriched because the United States Government, via LANS, reimbursed Defendant for travel expenses that he did not incur and paid him for hours that he did not work.

82. Defendant should not be allowed to retain funds he obtained in the commission of a fraud, because to allow him to retain the benefit of his fraud would be unjust.

## PRAYER FOR RELIEF

WHEREFORE, the United States demands judgment against Defendant as follows:

A. Three times the damages which the Government sustained because of Defendant's violation of the FCA plus interest and costs to bring the instant civil action;

B. Civil penalties for each violation of the FCA;

C. Costs sustained by the United States in this action as provided under the FCA;

D. Damages sustained by the United States under the common law theory of fraud plus punitive damages, interest, costs, and expenses, in an amount to be established at trial;

E. Damages sustained by the United States under the common law theory of unjust enrichment plus interest, costs, and expenses, in an amount to be established at trial.

F. For such other relief at law and at equity as the Court deems just and reasonable.

Respectfully Submitted,

ALEXANDER M.M. UBALLEZ
United States Attorney
District of New Mexico

*/s/ Cassandra Casaus Currie*
CASSANDRA CASAUS CURRIE
Assistant U.S. Attorney
United States Attorney's Office
P.O. Box 607
Albuquerque, New Mexico 87103
Phone: (505) 346-7274
cassandra.currie@usdoj.gov